IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PAUL STOSS and | : | |
|---|---|---|
| LINDA STOSS, | : | CIVIL ACTION |
|     Plaintiffs | : | |
| | : | |
| v. | : | NO. 08-5968 |
| | : | |
| SINGER FINANCIAL | : | |
| CORPORATION, et al | : | |
|     Defendants | : | |

**MEMORANDUM**

**STENGEL, J.**                                                                February 24, 2010

Paul and Linda Stoss secured a mortgage on their farm with Singer Financial Corporation. After defaulting on their payments, they sold the farm to pay off the loan. They now claim that Singer Financial and Paul Singer committed fraud, RICO violations, and wrongful use of civil proceedings in connection with the loan extension and default. Defendants filed a motion to dismiss the Stosses' complaint. For the reasons set forth below, I will grant the motion.

**I. BACKGROUND[1]**

The Stosses owned a dairy farm in Lehighton, Pennsylvania and early in 2006, decided to seek a loan for the purchase of cows which would cost them $60,000. Pls.' First Am. Compl. ¶¶ 10–12. The Stosses contacted Singer Financial in July, 2006 in

---

[1] Because this is a motion to dismiss, the facts are adopted from the plaintiffs' amended complaint and are viewed in the light most favorable to the plaintiffs.

1

response to an advertisement in a local farming paper and spoke with Paul Singer, President of Singer Financial, about a loan. Id. at ¶¶ 13, 16. Singer advised the Stosses that Singer Financial would lend them the $60,000 they needed for the purchase of the cows if they refinanced their mortgage with Singer Financial. Id. at ¶ 17.

In response to their inquiry, Singer required the Stosses to send Singer Financial certain documents, including tax returns and financial statements, towards underwriting the loan; he also required that they pay a $500 non-refundable loan application fee, a commitment fee of $25,000, and a legal fee of $1,000. Pls.' Am. Compl. at ¶¶ 21, 23, Ex. B. The Stosses allege that Singer promised the loan from Singer Financial would be $400,000 and that they would receive the $60,000 they needed for the purchase of cows. Id. at ¶ 25. After the loan and refinancing were approved and not including the $25,000 commitment, the Stosses received $47,000 in proceeds from the loan, an amount insufficient to cover the cost of the cows. Id. at ¶¶ 29–30.

The Stosses made interest payments on the loan at 12% per month and at some point missed a payment, causing the interest rate to increase to a default rate of 24%. Pls.' First Am. Compl. at ¶ 32. The Stosses allege that Singer and Singer Financial knew at the time of approving the loan that it was unaffordable to them and intended, by extending the loan, to collect "unlawful fees and interest and non-incurred costs . . . via pay-off, or a property and business with significant equity via foreclosure." Id. at ¶ 28.

The Stosses eventually defaulted on the loan and claim now that this was

defendants' intention all along. Pls.' First Am. Compl. at ¶¶ 33–35. On July 16 and again on August 13, 2007, Singer Financial mailed plaintiffs a payoff demand signed by Paul Singer. Id. at ¶ 36–37, Ex. D, E. On August 17, 2007, the Stosses sold the farm for $600,000 at a closing after which Singer Financial received $591,000 as payoff of the loan. Id. at ¶ 38.

The Stosses claim the payoff amount was inaccurately calculated by Singer Financial and contained unlawful charges including concealed compound interest. Pls.' First Am. Compl. at ¶ 39. They also claim that defendants filed a confession of judgment against plaintiffs in state court after receiving the payoff for the loan, doing so only to "retroactively justify its unlawful charges." Id. at ¶ 40. A civil case docket from Carbon County attached to the amended complaint as exhibit F shows that Singer Financial filed a complaint and confession of judgment against Paul and Linda Stoss on August 17, 2007. Plaintiffs' Ex. F. It shows that judgment was entered in favor of Singer Financial Corporation for $598,755.61 and that notice of the judgment and a copy of the judgment were sent to the Stosses on August 17, 2007. Id. The docket report indicates that the judgment was satisfied on September 19, 2007. Id.

The Stosses filed a complaint against Paul Singer, Singer Financial, and John Doe Defendants 1–10 on December 24, 2008. After defendants filed a motion to dismiss, the Stosses filed an amended complaint on June 8, 2009 which contained three counts: civil RICO, fraud, and wrongful use of civil proceedings.

Defendants claim in the current motion to dismiss that plaintiffs' claims are barred by the res judicata effect of the confession of judgment entered in Carbon County Court; that the Rooker-Feldman doctrine divests this court of subject-matter jurisdiction over the dispute; that plaintiffs have failed to state their fraud and RICO claims with sufficient specificity; and that plaintiffs' failure to state a federal claim divests this court of jurisdiction over their pendant state law claims.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. In ruling on a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure mandate that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. PRO. 8(a)(2). While detailed factual allegations are not necessary to survive a motion to dismiss, the plaintiff must state the grounds for relief by way of more than "a formulaic recitation of the elements" and must instead plead facts sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65 (internal citations omitted).

In a motion to dismiss, the moving party is permitted to plead and the reviewing court permitted to consider an affirmative defense "if the predicate establishing the defense is apparent from the face of the complaint." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978). In determining what affirmative defenses arise on the face of a complaint, a court generally must consider only the pleadings themselves and refrain from examining extraneous matters. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential-Bache Sec. Inc., 764 F.2d 939, 944 (3d Cir. 1985)). However, a court may consider a document that is "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into one for summary judgment. Id.

## III. DISCUSSION

### A. Plaintiffs' Fraud Claim

#### 1. Confession of Judgment

In Pennsylvania, a creditor may file a complaint and confession of judgment action in order to obtain judgment in his favor. See PA. R. CIV. P. 2951. The confession of judgment complaint must be in the form provided for in Pennsylvania Rule of Civil Procedure 2962 and only if it contains the required information in the proper format may the prothonotary enter judgment in favor of the plaintiff. PA. R. CIV. P. 2955(a), 2956; Crum v. FL. Shaffer Co., 693 A.2d 984, 985 n.1 (Pa.Super. 1997). If a confession of

judgment is entered, it is considered a final judgment on the merits. Zhang v. Southeastern Financial Group, Inc., 980 F.Supp. 787, 792 (E.D. Pa. 1997) (citing Klecha v. Bear, 712 F. Supp 44, 46 (M.D. Pa. 1989)).

A party seeking relief from a judgment by confession must do so by filing a petition to open or strike the confessed judgment. PA. R. CIV. P. 2959. "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record" and it "may be granted only for a fatal defect or irregularity appearing on the face of the record." Resolution Trust Corp. v. Copley Qu-Wayne Assoc., 683 A.2d 269, 273 546 Pa. 98 (Pa. 1996) (internal citations omitted). A petition to open will be granted where the defendant to a confession of judgment produces evidence in his defense "which in a jury trial would require the issues to be submitted to the jury." Riverside Mem'l Mausoleum, Inc., v. UMET Trust, 581 F.2d 62, 67 (3d Cir. 1978). The proceeding to open a confessed judgment is an adversarial one. Id.

### 2. Effect of the Rooker-Feldman Doctrine on Plaintiffs' Fraud Claims

The Rooker-Feldman doctrine[2] prevents lower federal courts from sitting "in direct review of the decisions of a state tribunal." Flannery v. Mid-Penn Bank, No. 1-CV-08-0685, 2008 WL 5113437 at *3 (M.D.Pa. Dec. 3, 2008) (quoting Gulla v. North Strabane Twp., 146 F.3d 168, 171 (3d Cir. 1998)). Because only the Supreme Court has

---

[2] The Rooker-Feldman doctrine takes its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 140 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

6

jurisdiction to review a state court's decision, a federal district court necessarily lacks subject matter jurisdiction over an action that is the "functional equivalent of an appeal of a state court judgment." Id. (citing Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004)). The Rooker-Feldman doctrine applies to cases "brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The Third Circuit, interpreting the Supreme Court's decision in Exxon-Mobil, ruled that a claim is barred by Rooker-Feldman under only two circumstances: "first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Knapper v. Bankers Trust Co., 407 F.3d 573, 580 (3d Cir. 2005). "A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." Id. (quoting Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004)).

"A confessed judgment . . . would necessarily imply a determination that [the defendant to the confessed judgment] was in default in the stated amount under a valid

7

and enforceable note." Zhang v. Haven-Scott Assoc., Inc., No. 95-2126, 1996 WL 355344 at *8 (E.D.Pa. June 21, 1996) (citing Riverside Mem'l Mausoleum, Inc., 581 F.2d at 66-68); see also Flannery, 2008 WL 5113437 at *5. Therefore, allowing a plaintiff to attack the validity of a state court confession of judgment in a federal district court proceeding would violate the Rooker-Feldman doctrine. In Flannery, the defendant bank sought and was granted judgment by confession in Pennsylvania state court against the plaintiff after the plaintiff defaulted on a loan administered by the bank. 2008 WL 5113437 at *1. Judge Rambo determined that the plaintiff was barred by Rooker-Feldman from then asserting fraud, fraudulent inducement, and deceit claims against the bank in federal District Court, reasoning that, "[f]or the court to find that Defendants procured the guaranty by fraud would necessarily imply that the state court erroneously entered the confession of judgment." Id. at *5.

The same reasoning applies here. For this court to determine that Singer committed fraud in extending the loan to the Stosses would necessarily require this court to find that the Northampton County Court erroneously entered the confession of judgment against the Stosses for the amount due under the terms of the loan. Doing so would constitute a review of that judgment that this court does not have jurisdiction to undertake. Therefore, Singer's motion to dismiss the Stosses' fraud claims on Rooker-Feldman grounds is granted.

**B.     Plaintiffs' RICO Claim**

Generally under the Federal Rules of Civil Procedure, a plaintiff need submit notice pleadings, which require "only a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  However, Rule 9(b) imposes heightened pleading requirements in fraud cases, requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

The Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961–1968, allows plaintiffs "injured in [their] business or property by reason of a violation of section 1962" to file civil suit against the alleged violators.  18 U.S.C. § 1964.  Section 1962 contains four subsections, and a violation of any one is sufficient to create RICO liability.

To plead a claim for relief under Section 1962(a), a plaintiff must allege that the defendant has (1) received money from a pattern of racketeering activity, (2) invested that money in an enterprise, and (3) that the enterprise affected interstate commence.  See 18 U.S.C. § 1962(a).  To state a cause of action under Section 1962(b), the plaintiff must allege that the defendant has employed the racketeering conduct or proceeds to "acquire or maintain, directly or indirectly, any interest in or control any enterprise" affecting interstate commerce." 18 U.S.C. § 1962(b).  To successfully establish a civil RICO claim under Section 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity." Warden v. McClelland, 288 F.3d 105, 114 (3d Cir. 2002) (citing Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Section 1962(d) prohibits a defendant from conspiring to violate subsection (a), (b), or (c). 18 U.S.C. § 1962(d).

The Stosses have failed to state a claim for a civil RICO violation. They have failed to allege a RICO enterprise separate and distinct from the defendants and they have failed sufficiently to allege a pattern of racketeering activity.

The Stosses' RICO count does not specify which subsection of Section 1962 any defendant is alleged to have violated, and consists of the following five paragraphs:

> "50. Plaintiffs and Defendants are persons within the meaning of 18 U.S.C. § 1961(3).
> 51. Defendants collectively and/or individually, and/or including and by and through others, constitute an association in fact enterprise within the meaning of 18 U.S.C. § 1961(4).
> 52. Defendants through their agents, servants, workmen and employees, in their statements, conversations, and communications between Defendants, among other conduct and including between other persons, utilizing the internet, mail, telephone wires, and facsimile transmittals through the telephone wires, constitute violations of the Federal Mail and Wire Fraud Statutes, 18 U.S.C. § 1341 and § 1343, in that they make use of the United States interstate mail and wires in furtherance of a scheme to defraud, and contain numerous false statements, as alleged herein.
> 53. Defendants have committed more than two (2) predicate acts of racketeering activity, as defined by 18 U.S.C. § 1961(1), thereby constituting a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5).
> 54. The Enterprise is engaged in or affects interstate commerce."

Pl.'s Am. Compl. ¶¶ 50-54. Because the Stosses do not adopt the operative language of Section 1962(a) or (b) by alleging that Singer or any other defendant has invested the

10

proceeds from the alleged racketeering activity or has used the proceeds to acquire or maintain an interest in the enterprise, their complaint will be construed to allege a violation of Section 1962(c). Section 1962(c) imposes liability for conducting an enterprise through a pattern of racketeering activity. The Stosses allege in their RICO count that defendants "constitute an association in fact enterprise" and that their actions "[constitute] a pattern of racketeering activity."

 1. **Existence of An Enterprise**

"To state a claim under section 1962(c), the plaintiff must allege that (1) a person conducted (2) an enterprise through (3) a pattern of (4) racketeering activity." Kolar v. Preferred Real Estate Investments, No. 07-3864, 2008 WL 2552860 at *4 (E.D.Pa. June 19, 2008) (citing Sedima, 473 U.S. at 496). The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. § 1961(4). Section 1962(c) requires that the RICO defendant or "person" is separate and distinct from the alleged RICO "enterprise." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). In other words, the RICO "enterprise" cannot simply be the "person" referred to by a different name. Cedric Kushner Productions, Ltd. v. King, 533 U.S. 158, 161, 121 S.Ct. 2087 (2001). In the context of an allegation involving a corporate entity, a plaintiff asserts a valid claim under

Section 1962(c) when he alleges that a corporate owner or employee who is distinct from the corporation itself "conducts the corporation's affairs in a RICO-forbidden way." Kushner, 533 U.S. at 163. In such a situation, the owner or employee is the "person" and the corporation is the "enterprise." Id. However, a claim that the corporation is the "person" and the corporation together with its employees and agents is the "enterprise," will not withstand a motion to dismiss. Id. at 164 (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). Similarly, a reference to the corporation as both the "person" and as the "enterprise" within a complaint is a fatal defect. See Zavala v. Wal-Mart Stores, Inc., 447 F.Supp.2d 379, 383-84 (D.N.J. 2006).

The Stosses' amended complaint identifies Singer Financial as the originating lender and Paul Singer as an individual "acting individually and/or doing business as an officer and/or member of the originating lender." Pl.'s Am. Compl. ¶¶ 7–8. It alleges that "Singer, Singer Financial, and the Board of Directors as well as their investors constitute an enterprise." Id. ¶ 43. It is not clear from the complaint whether Singer or Singer Financial is the "person" accused of conducting the enterprise in such a way as to commit RICO violations, and the complaint's only reference to a "person" as defined in the RICO statute states that "Plaintiffs and Defendants are persons within the meaning of 18 U.S.C. § 1961(3)." Because the Stosses fail to even attempt to distinguish the alleged enterprise from the person accused of RICO violations and because it appears from the complaint that the "person" and the "enterprise" are one and the same, Singer's motion to

12

dismiss will be granted on this ground.

## 2. Allegation of a Pattern of Racketeering Activity

In order to plead a violation of Section 1962(c), the plaintiff must also allege that defendants engaged in a pattern of racketeering activity. "A 'pattern' of racketeering activity requires commission of at least two predicate offenses on a specified list." Kehr Packages, 926 F.2d at 1411 12 (3d Cir. 1991). "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." Warden, 288 F.3d at 114 (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 657–58 (3d Cir.1998)). If mail and wire fraud are asserted as the basis for RICO liability, "plaintiffs must plead with particularity the 'circumstances' of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citing Seville Indus Mach. Corp. v. Southmost Mach. Corp., 743 F.2d 786, 791 (3d Cir. 1984)). "[I]n determining the duration of a scheme involving mail fraud, the relevant criminal conduct is the defendant's deceptive or fraudulent activity, rather than otherwise innocent mailings that may continue for a long period of time." Kehr Packages, 926 F.2d at 1418.

The Stosses claim Singer and Singer Financial violated the mail and wire fraud statutes by "[making] use of the United States mail and wires in furtherance of a scheme

13

to defraud" by sending the Stosses communications that "contain numerous false statements as alleged herein." Pl.'s Am. Compl. ¶ 52. Within the body of their amended complaint, the Stosses claim that Singer "demanded unearned and non-incurred fees and costs," represented that the mortgage would be affordable to the Stosses even though it was not, and represented that the Stosses would receive enough money to purchase cows from the proceeds of the loan when they would not. Pl.'s Am. Compl. ¶¶ 23, 47, 48.

Even if I assume that these misrepresentations constitute predicate racketeering acts for purposes of RICO, the Stosses' claim must be dismissed because they have failed to allege a pattern of racketeering activity in violation of Section 1962(c). In the leading case explaining this requirement, H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 109 S.Ct. 2893 (1989), the Supreme Court stated that a plaintiff alleging violations of the civil RICO provisions "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." (emphasis in original). The relatedness inquiry focuses on whether the alleged predicate acts "are interrelated by distinguishing characteristics and are not isolated events." Id. at 240. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. The Court observed that "Congress was concerned in RICO with long-term criminal conduct" and ruled therefore that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the

14

continuity] requirement."

A plaintiff alleging a closed-ended or closed-period RICO scheme "must prove a series of related predicates lasting a 'substantial period of time.'" Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 609 (3d Cir. 1991). Although the Third Circuit has refused to set a "litmus test" to measure duration, it has held that twelve months is not a substantial period of time. Id. at 611. More broadly, it has observed that in cases where the object of the fraudulent activity is a "single piece of real estate," (citing Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990)), or an attempt "to force a single business entity bankrupt," (citing Marshall-Silver Construction Co. v. Mendel, 894 F.2d 593 (3d Cir. 1990)), is "directed at a single entity," (citing Kehr Packages, 926 F.2d at 1418) or can generally be characterized as a "single-scheme, single-victim" transaction, there is no "pattern" of racketeering activity. Id. at 610-611.

A plaintiff may also allege a claim in terms of open-ended continuity. In this situation, the plaintiff is unable to establish the continuity of a past, closed-ended scheme, but can instead allege conduct that poses "a threat of continuity." H.J., 492 U.S. at 242. "A threat of continuity exists when the predicate acts are a part of defendant's 'regular way of doing business.'" Hughes 945 F.2d at 610 (citing H.J., 292 U.S. at 242).

The Stosses have failed to allege a scheme that qualifies under either closed- or open-ended continuity. The "scheme" they describe in the amended complaint is based on one allegedly fraudulent transaction directed at the Stosses and their farm. It is, as

15

described by the court in Hughes, a "single-scheme, single-victim" transaction. Moreover, the Stosses contacted Singer about the loan in July of 2006 and defaulted on the loan one year later. In their complaint, they do not even attempt to set forth the dates of the predicate fraudulent racketeering acts and do not allege that such acts took place over the course of this year. They have not alleged that a year separated any two alleged predicate racketeering acts and therefore have failed to allege that Singer's scheme took place over a substantial period of time. They would be unable to make such allegations since only thirteen months elapsed between the initial contact between the Stosses and Singer and the sale of their farm.

The most specific allegation concerning Singer's alleged pattern of racketeering is the conclusory statement that "the enterprise engages in the above activities as its pattern and practice which improper charges constitute a scheme and artifice to defraud through use of the mail and wires in the advertising, communication, funding, credit inquiries and lending with regards to its hard money loans." Pl.'s Am. Compl. ¶ 46. This statement simply fails to describe a threat of continued criminal conduct qualifying as an "open-ended pattern of racketeering." It contains no facts supporting such a bald assertion.

In sum, the Stosses attempt to do exactly that which the Supreme Court and the Third Circuit have repeatedly ruled is insufficient. They seek to proceed with a RICO count against Singer and Singer Financial for conducting an enterprise via a pattern of racketeering activity by alleging, with almost no specificity, predicate acts that occurred

over a limited period of time and that threaten no future criminal conduct. They have failed to state a claim for RICO liability.

## C. Leave to Amend

Courts shall give a party leave to amend a complaint "when justice so requires." FED.R.CIV.P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). However, a court "may deny leave to amend on grounds such as undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." Smith v. NCAA, 139 F.3d 180, 190 (3d Cir.1998). "An amendment is futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim." Id.

I will deny the Stosses leave to amend Counts I and II of their complaint alleging civil RICO and fraud. No amendment to the Stosses' complaint will cure this court's lack of subject matter jurisdiction over their fraud claim. Their civil RICO claim would not withstand a motion to dismiss even with an amendment to cure such deficiencies as their failure properly to allege the existence of a person separate and distinct from the RICO enterprise. There are no facts within their complaint to support a RICO claim for conducting an enterprise through a pattern of racketeering activity. No amendment would cure or change the fact that the allegedly fraudulent mortgage and foreclosure on which

they base their RICO claim was a single transaction directed at a single piece of property affecting only the Stosses. They have similarly failed to allege any facts which might support a claim that Singer and Singer Financial pose a continuing criminal threat. Simply put, there is nothing more the Stosses can add to their complaint that will render it viable.

**D.     Plaintiffs' State Law Claim for Unlawful Use of Civil Proceedings**

Because I will grant Singer's Motion to Dismiss the fraud and civil RICO claims in counts I and II, I dismiss Count III for lack of subject matter jurisdiction. The state claim for Wrongful Use of Civil Proceedings in violation of 42 Pa.C.S.A. § 8351 was brought pursuant to 28 U.S.C. § 1367, which grants supplemental jurisdiction to other claims "so related to the claims in action within such original jurisdiction that they form part of the same case or controversy." Subsection (c) grants the district court discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction.

## IV. CONCLUSION

I will therefore dismiss Counts I and II with prejudice and dismiss Count III without prejudice. An appropriate order follows.